The next case is number 22-1169, Stephen R. Crockett v. U.S. Railroad Retirement Board. At this time, would Attorney Fenner introduce himself on the record to begin? Good morning. Riley Fenner for the petition. You mind just raising your mic? Yes. Thank you. There we are. Is that better? Yes. Okay. Riley Fenner for the petitioner, Stephen Crockett. Go ahead. Oh, I would ask for permission to reserve two minutes of my allotted time. You may. Thank you. Both of the hearing officer's errors raised in the petition for review in this case were compounded and really made more harmful by the petitioner's lack of legal representation in the administrative proceedings before the U.S. Railroad Retirement Board and by the petitioner's acknowledged mental disability during the course of those proceedings. The respondent's brief at page 12 acknowledges that the record in this case clearly establishes that Mr. Crockett is currently disabled due to a mental impairment, specifically schizophrenia. He was found to be currently disabled due to a mental impairment by the Social Security Administration prior to the proceedings in this case being instituted. In that case, he was found to be disabled due to a schizotypal personality disorder. However, in the proceedings before the Railroad Retirement Board, in order to obtain an annuity based upon his late father's record of employment by the railroad, he needs to establish that he became disabled prior to the age of 22. The hearings officer who conducted the October 2018 hearing in this matter for the RRB failed to adequately develop the evidence of record concerning the material questions of whether Mr. Crockett had suffered from a disabling mental impairment since prior to age 22 and whether he had engaged in substantial gainful activity as an adult when he was paid for several years to act as a caregiver for his mother in the home that they had shared for most of his adult life. There was a licensed clinical social worker who was treating Mr. Crockett for his mental impairments, Wayne Bochner, who appeared as his representative at the time. Counsel, how old is he now? He is in his 60s now. So 40-plus years past the 22, and how many years did he have this employment as his mother's caretaker? Was it six years, five years? It was approximately, it appears to have been approximately six years. I want to say it was found to be substantial gainful activity. And that was when he was in his 40s? That's correct, yes. That's the pivotal issue, right? It all comes down to whether that work was substantial gainful employment. That is a pivotal issue. Well, if you lose that issue, you lose the case, don't you? But it's also the case that if you win that issue, you lose the case if you can't show that there was a basis for showing he had the schizophrenia prior to age 22, correct? There are two, those are two essential problems, and we have argued that the hearings officer's findings on both those issues. So why don't you just address why the record shows there was something in your favor that the board aired as to those two pivotal questions? Sure. In terms of, yes, in terms of the, first of all, the issue of Mr. Crockett's entitlement, establishment that he was unable to sustain any substantial gainful activity due to a mental impairment since prior to age 22. It's acknowledged, there's no dispute here that at the point when he instituted this claim, the written treatment records from back in that time period no longer existed. They had long ago been destroyed by the medical facility. Is there any document showing a present diagnosis of schizophrenia? Yes. That was diagnosed by Dr., his present psychologist, Dr., sorry, Dr. Rabin. And he has medical records showing that diagnosis that are in the record? Yes, for the current time period. So the only issue is whether there is a basis for thinking he had that same condition prior to being age 22? Yes. And the board's position is you need a document showing that? It appears to be. Mr. Crockett did, there are two letters in the record from a treating psychologist, Dr. Voss, who Mr. Crockett did see prior to age 22, beginning as a teenager and for some period of time then. The first letter from Dr. Voss is a bit equivocal. He didn't have much specific recollection of Mr. Crockett at that time, but he did think it was most likely that he had been a patient of his. And that was after Mr. Crockett was contacted by, Mr. Crockett contacted Dr. Voss himself. The second time Dr. Voss was contacted, he was contacted by Dr. Rabin, who was actually in really the same practice where Dr. Voss had been years earlier. And based upon that discussion, Dr. Voss thought he could recall at that point in his second letter that Mr. Crockett had been his patient and that he had been diagnosed with schizophrenia back when he was a teenager. The hearings officer basically just discounts the second letter on the basis of the first letter, saying, well, the first time he wrote a letter, he didn't specifically remember this individual, so the second letter is not reliable. We contend that the hearings officer should have made an attempt to further develop the record regarding this crucial issue before making a finding that was adverse to Mr. Crockett here, especially in light of the two factors that I mentioned earlier, that Mr. Crockett did not have legal representation by an attorney in the administrative proceedings and was currently acknowledged to be disabled by a mental impairment. Just so I get your argument, you say there is medical records in place through this Dr. The current treating physician? Yes, Rabin. Who has put forward evidence that the board doesn't discount that he currently has schizophrenia. Yes. And so the only question then is, is there a basis for thinking he had it prior to age 22? Yes. And the only way you could show that would be? I would say the testimony or a written report, and I think ideally testimony from Dr. Voss, and possibly also some testimony. And the idea is either the board is taking the position that if you've lost the records, you've lost the records and that's tough luck, or it's taking the position that because Dr. Voss once said I don't remember the person and then came back and said, no, I do remember and I treated him with Thorazine, that's a basis for saying no. And you say given the circumstances here, that's not enough. They should have developed it and put Voss on the stand or something like that? I think, yes, ideally called him to testify. Didn't they also point to the hearing officer also point to the SSDI application process in which he was required to have a date of onset of the disability to qualify for SSDI? Yes. And just briefly, I know I'm past here, but in that proceeding, in the application for Social Security disability benefits, it wasn't necessary for Mr. Crockett to establish they became disabled prior to age 22, and it doesn't appear that there would have been a benefit for him by doing so. Could you just address Judge Kaddas' question before you sit down about the gainful activity issue, because that's the other necessary prong of it? It is, yes. And Mr. Crockett, what he presented as far as his testimony about that employment, was essentially what it primarily consisted of was having someone being available to be at home with his mother in case she needed assistance when she became elderly so that she wouldn't have to go into a nursing home. He, you know, which he had essentially been home with her throughout his adult life. He said his daily activities didn't change at all during that time period. And we contend that the hearings officer, through this conversation that is really not very substantiated that she had with someone at the Maine Department of Health and Human Services, improperly discredited that testimony about the nature and extent of his work activity. Thank you. Any further questions? Thanks. Thank you. At this time, if Attorney Kirk would please go ahead and introduce herself on the record to begin. Good morning, Your Honors. May I please support Eunice Kirk on behalf of the United States Railroad Retirement Board? You can start. Your Honors, this is a sympathetic case of an individual who is currently disabled. However, the issue before this Court is whether Mr. Crockett's disability started over 45 years ago and has continued to the present day. In this case, there is no evidence to show that he was disabled prior to age 22. What's the evidence that you have in mind he could come up with now if we agree, and I don't think the Board seems to dispute, that the records that he contends are the records that would show that have been destroyed? So under our regulations in Section 220.27, it explains what evidence is required to show an impairment. It states a physical or mental impairment which can be shown by medically acceptable clinical and laboratory diagnostic techniques. Yeah, but what's supposed to happen practically? He's 60. He has to prove he had this condition before he was 22. He says, I can prove it because I was treated at this facility. Everybody agrees that that facility is a facility he could plausibly have been treated at, and everybody agrees the records that could show whether he was so treated have been destroyed through no fault of his own. So what's the Board's position as to what a person like that is supposed to do? Just tough luck? Well, we would also look to any other type of evidence, such as school records, if there was any indication of treatments within even close to that time frame. In this case, there were no medical records until 2003, and no medical records showing any mental impairments until 2010. So if Dr. Voss in the first letter had said, yeah, I remember him, and I treated him, he had schizophrenia, and I treated him for Thorazine, under the Board's rules, could that be enough to show that he was disabled before 22? Unfortunately, a statement that is not corroborated by any medical evidence under our regulations isn't given as much weight. It is considered against all the other evidence in the record as well. In this case, that was the only evidence provided prior to age 22, a naked statement that was unsupported. According to the record, Mr. Crockett turned 22 on March 1, 1976, and applied for a child disability annuity. So basically the idea is, I'm just trying to understand the Board's position, is it because it's deemed not credible, or what? I mean, it's not as if it's a friend who's saying it. It's the treating physician. And he's identifying the drug that he administered to the child at that time. There is an issue of credibility in this case, because we find that a doctor stating that he doesn't remember a patient, and then two years later, with the passage of time, does remember it more clearly, does not seem credible. However, the fact is that less weight is given to an unsupported statement under our regulations. And the only evidence in support also is the letter from the current physician stating he's currently suffering from schizophrenia. Why isn't that corroborated, given the evidence that there's no evidence to show that that's usually a lifelong condition? Sure, there is a conclusory statement stating that it usually appears in adolescence. However, that isn't proven in this case with any medical evidence. But it's made by a doctor who says that, right? Yes, but there are no medical records to back that up. Medical records of what? That this particular person had it? Yes, starting from adolescence, that it was not only an impairment, that he had schizophrenia at that time, but it was disabling for all work. But what I'm saying is if there's an expert opinion that the condition that everybody agrees there is evidence to show he now has is one that manifests in adolescence, why isn't that corroborative of the statement of the Dr. Voss that, in fact, in adolescence, I treated this very patient for that very condition? Just because it's a conclusory statement. I don't know what you mean by conclusory. Isn't it an expert view about the condition? Right, and it's stating that it sometimes does appear in adolescence, but there's nothing in this case. Doesn't it say it usually does? Usually, I believe usually, yes. So why isn't that corroborative of Dr. Voss' memory? Corroborative in our regulations means corroborated by medical evidence. But why isn't the medical evidence that the condition he's saying he has, which he does now have, is one that usually would show up at the age he's saying he had it? Because under our regulations, what is needed to show the impairment is the clinical and laboratory diagnostic techniques that are independent and based on signs and symptoms and laboratory findings, not just the statement alone. And the board found the medical evidence provided was insufficient to support a finding of a continuing permanent disabling impairment prior to age 22. And the board's decision to deny the child disability annuity was further supported by the fact that Mr. Crockett's employment with Admiral Care Services, caring for his mother, was substantial gainful activity. This work was done from 1999 to 2006 and was considered substantial gainful activity from 2001 to 2006. Mr. Crockett's earnings during those times were significant and over the substantial gainful activity levels. Prior to applying for the child disability annuity, Mr. Crockett also applied for a Social Security benefit based on those earnings. And at no time during his application with the Social Security Administration did he claim his work as a personal care attendant for Admiral Care Services was not substantial gainful work activity. Mr. Crockett received training to become a personal care attendant. He received a title as a personal care attendant. He received increased hours over the years. And he only stopped working when his mother fell and was admitted into a care facility. In the Fifth Circuit's Gatliff case, they seem to take the view that many of the features that you just identified could be true and yet it still could not be substantial gainful activity if it's such a unique personal family type caregiving or relationship that it's not something that you could replicate in the economy outside that connection. So why isn't that a relevant precedent here? In this case, there is no evidence to show his mental impairment was taken into consideration when he was hired and the board therefore found no evidence that he was... Yes, there are in-home care... So I'm saying if the in-home care a person is providing is for a personal relative, I read Gatliff to suggest you can't necessarily deduce from that that because they could provide the care in that setting, they could do substantial gainful employment in the sense that they could be employed in the wider economy. And why aren't the facts of this case a lot like that? As we stated in our brief, the in-home care services can be considered substantial gainful activity, especially when there is an employee-employer relationship such as a W-2. There are reported hours that the individual needs to report in order to be paid. There are... In the reverse, there are situations where it's a state-run program where there's a stipend or a 1099, instead of a W-2, they file a 1099 form where they are not performing work for wages. And further, Mr. Crockett's job was not for a limited period of time. He was successful in his job, and his schizophrenia was not even known nor was it accounted for in his employment. Last, the record in this case was properly developed. In this case, the Railroad Retirement Board is seeking medical evidence. However, the hearings officer did request records from Dr. Voss and was told all medical records were destroyed. The hearings officer contacted his employer and attempted to contact his employer who is no longer in business, requested and reviewed all medical records from the Social Security Administration. He argued that the testimony should have been acquired by Mr. Crockett's doctors. However, there is nothing in the record to show that additional testimony would help in conclusively establishing Mr. Crockett had a physical or mental impairment prior to age 22. Based on the evidence in the record, Petitioner has not met his burden for furnishing the evidence required to prove his eligibility. And the Board respectfully requests that the Court affirm its decision as its findings of fact are supported by substantial evidence in the record and not based on error of law. Thank you. Thank you at this time. Mr. Fenner, if you would reintroduce yourself on the record, you have a two-minute rebuttal. Thank you. Riley Fenner for Stephen Crockett. The hearings officer in this instance did not adequately develop the record concerning these identified ambiguities in the letters that were provided by Dr. Voss and Dr. Rabin. The regulations that apply to this case, including 20 CFR 220.112C, describe the Board's duty to recontact a treating source for clarification before making a determination. Especially in this case where Mr. Crockett did not have a lawyer representing him and there was no real dispute about the evidence of his present mental impairment and present disability as a result of that currently diagnosed schizophrenia. The hearings officer should have done more to resolve those ambiguities in those letters before discrediting the opinions of both Mr. Crockett's past and present treating psychologists. And the hearings officer also should have done more with respect to the substantial gainful activity issue. It is set out. Quite a lot of the hearings officer's findings are based upon a telephone conversation that the hearings officer made notes about with a really not specifically identified employee at Maine DHHS. The hearings officer did not try to go get actual records to clarify that issue. And Mr. Crockett's testimony was entirely inconsistent with applying to this case. Was there any testimony or other evidence in the record that you could highlight for us indicating that he did seek to continue his employment outside of his mother's home at any point? Or if he didn't, why he didn't? There's no evidence that he affirmatively did seek to continue his employment after his mother had to go into a nursing home. And what he indicated, which was that both he and Admiral Home Care Services didn't feel that he would have been capable of doing that kind of work anywhere outside his home for anyone other than his mother. Thank you. That concludes arguments in this case.